IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HELEN LUCERO,

      **Plaintiff,**

v.                                                        No. CIV-05-0459 JH/RLP

UNITED STATES OF AMERICA,

      **Defendant.**

## PLAINTIFF HELEN LUCERO'S REQUESTED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I.     BACKGROUND

Plaintiff alleges that she suffered injuries as the result of the medical negligence of Imtiaz A. Malik, a physician's assistant employed by Health Centers of Northern New Mexico ("HCNNM"), on November 11, 2003. Specifically, Plaintiff alleges that Mr. Malik's negligence included improper prescription of medications, including Bumex and Clonidine. Although the Bumex did not cause any injury, the Clonidine is alleged to have caused an adverse drug reaction which resulted in medical care, hospitalization and treatment. Plaintiff further specifically alleges that HCNNM was negligent in the hiring, training and supervision of its employees and medical staff, including Mr. Malik.

As a result of HCNNM's and Mr. Malik's negligence, Plaintiff contends that she suffered serious bodily injuries, emotional distress, pain and suffering, loss of enjoyment of life and loss of household services. She has incurred expenses for medical care, commodities

and treatment for those injuries.  She contends that she is therefore entitled to recover general and special compensatory damages.

## II.    FINDINGS OF FACT

1.    Plaintiff Helen Lucero is a resident of the State of New Mexico.

2.    At all times material hereto, HCNNM, a non-profit corporation organized under the laws of the State of New Mexico, operated federally funded health care facilities, including a health clinic located in Las Vegas, New Mexico.

3.    Plaintiff Helen Lucero has a history of chronic hypertension and numerous other health problems.  As of November 11, 2003, her hypertension was being treated by personnel at HCNNM in its Las Vegas, New Mexico clinic.

4.    On October 21, 2003, Pamela Wolz, a physician's assistant employed by HCNNM, changed the medication prescribed for Plaintiff's hypertension from Plendil to Diovan.

5.    On November 11, 2003, Plaintiff returned to HCNNM for a follow up because she believed that the Diovan was not lowering her blood pressure and was causing her to hyperventilate and feel anxious.

6.    Plaintiff was first seen on November 11, 2003, by Frances Gonzales, a medical assistant employed by HCNNM, who spoke with Plaintiff, obtained her vital signs, and completed the top portion of the "Progress Note" for that day.  She listed Plaintiff's allergies

as including "sulfa, codeine, and eggs."  She listed Plaintiff's blood pressure as 202/104.  She

then left the examining room.

7.    During her visit to HCNNM on November 11, 2003, Plaintiff next was

examined by Imtiaz A. Malik, a physician's assistant employed by HCNNM.

8.    During his examination of Plaintiff on November 11, 2003, Mr. Malik

measured Plaintiff's blood pressure as being 200/104.  He conducted a routine examination

of her heart, ears, eyes, nose and throat.

9.    HCNNM's medical records for Plaintiff prior to November 11, 2003 contained

clear and repeated notations that Plaintiff was allergic to sulfa, codeine and eggs.  In addition,

Plaintiff's medical records at HCNNM documented her adverse reaction to thiazide diuretics,

including Maxzide.

10.    Without consulting a physician, and notwithstanding the allergies noted in

HCNNM's medical records for Plaintiff prior to and on November 11, 2003, Mr. Malik

nonetheless recommended that Plaintiff discontinue taking the Diovan and prescribed Plendil

and Bumex.

11.    Bumex, a brand of bumetanide, is a potent sulfa-based loop diuretic, and is

expressly contraindicated in patents, like Plaintiff, who are allergic to sulfonamides.

12.    In prescribing Bumex to Plaintiff under these circumstances, Mr. Malik failed

to exercise the degree of care, skill and learning expected of a reasonably qualified healthcare

provider in the same or similar circumstances, giving due consideration to the locality.

3

13.     During his examination of Plaintiff on November 11, 2003, Mr. Malik administered a 0.1 mg. dose of Clonidine to Plaintiff in the clinic.  He then waited 15 minutes and rechecked Plaintiff's blood pressure, which, by that time, was 190/84.  Mr. Malik recommended that she return for a follow up visit in 1 - 2 weeks.

14.     Clonidine is a medication with known adverse reactions including postural hypotension and rebound hypertension.  It is expressly contraindicated in patients, like Plaintiff, with renal insufficiency.

15.     Plaintiff presented to HCNNM on November 11, 2003 with a hypertensive status which did not require or suggest a need for the administration of Clonidine, or any other rapidly acting "urgent" agent.  There were no documented signs or symptoms to indicate that she was having a malignant hypertensive episode, and there was no reason to subject her to the risks of a rapid agent.  In administering Clonidine to Plaintiff under these circumstances, Mr. Malik failed to exercise the degree of care, skill and learning expected of a reasonably qualified healthcare provider in the same or similar circumstances, giving due consideration to the locality.

16.     Adverse reactions to Clonidine may be idiosyncratic and difficult to predict so it is important for the practitioner to carefully monitor patients who are administered Clonidine.  The Seventh Report of the Joint National Committee on Prevention, Detection, Evaluation, and Treatment of High Blood Pressure, a report relied on by experts for both parties, specifically states that treatment of hypertensive urgencies with Clonidine should be

followed by several hours of observation.  It is particularly inappropriate to give a patient a dose of Clonidine and discharge the patient after 15 minutes and without counseling regarding potential side effects and adverse reactions.

17.     Without consulting a physician, and notwithstanding the need for additional monitoring, Mr. Malik discharged Plaintiff approximately 15 minutes after administering the Clonidine to her.

18.     There is no record that Mr. Malik provided Plaintiff with any advice or cautionary instructions regarding potential reactions to the Clonidine.

19.     In failing to adequately monitor Plaintiff  after administering the Clonidine, and in discharging Plaintiff without providing any advice or cautionary instructions regarding potential reactions, Mr. Malik failed to exercise the degree of care, skill and learning expected of a reasonably qualified healthcare provider in the same or similar circumstances, giving due consideration to the locality.

20.     Plaintiff filled her prescriptions for Plendil and Bumex on November 11, 2003, but did not take either medication that day.

21.     Upon returning home after her examination and treatment at HCNNM, Plaintiff felt lethargic and uncomfortable.  Later, after going to bed, she had trouble breathing.  When she alerted her son, Lonnie Lucero, to her problems, he became alarmed and prepared to call an ambulance.  He then noticed that Plaintiff's lips were turning blue and decided to transport her to the hospital himself.

22.     During the short trip to the hospital, Lonnie Lucero noticed that his mother had turned completely blue, that her tongue was hanging out, and that she was foaming at the mouth.  He thought his mother was dead.

23.     Plaintiff was admitted to Northeastern Regional Hospital in Las Vegas, New Mexico, on the night of November 11, 2003.  When Plaintiff arrived there she was not breathing.  When she was examined in the emergency room of the hospital, she was determined to be deeply cyanotic and comatose and was immediately intubated.  She also was violently agitated, and was sedated with benzodiazepines.  A chest x-ray showed increased infiltrates, which was suspected to be the result of acute respiratory distress.  The treating physicians suspected that Plaintiff was suffering from anaphylactic shock with acute respiratory failure.  Plaintiff was admitted to the intensive care unit of the hospital and placed on a ventilator.

24.     From November 11-16, 2003, Plaintiff was treated at Northeastern Regional Hospital for medical problems related to the adverse reaction to the Clonidine.

25.     On November 17, 2003, Plaintiff was transferred from Northeastern Regional Hospital to Presbyterian Hospital in Albuquerque for cardiac catheterization.

26.     The administration of the dosage of Clonidine from Mr. Malik directly and proximately caused Plaintiff's adverse reaction and hospitalization on November 11-16, 2003.

27.     Mr. Malik's negligence in treating Plaintiff without consultation is evidence of HCNNM's negligent hiring, training and supervision of its employees and medical staff. This negligence directly and proximately caused Plaintiff's adverse reaction and hospitalization on November 11-16, 2003.

28.     As a direct and proximate result of Mr. Malik's negligence, Plaintiff incurred $54,834.40 in medical bills from Northeastern Regional Hospital for care provided from November 11-16, 2003.

29.     As a direct and proximate result of Mr. Malik's negligence, Plaintiff incurred $1407.56 in medical bills from employees of HCNNM for care provided while Plaintiff was hospitalized at Northeastern Regional Hospital from November 11-16, 2003.

30.     The above-listed medical bills were reasonably and necessarily incurred as the result of the medical problems caused by Mr. Malik's negligence.

31.     The amounts of the Northeastern Regional Hospital and HCCNM bills were the reasonable and customary charges for services of this type.

32.     The value of pain and suffering that Plaintiff endured as a result of Mr. Malik's and/or HCNNM's negligence is at least $150,000.

33.     The value of emotional distress that Plaintiff endured as a result of Mr. Malik's and/or HCNNM's negligence is at least $150,000.

34.     The value of loss of enjoyment of life that Plaintiff endured as a result of Mr. Malik's and/or HCNNM's negligence is at least $25,000.

35.     The value of lost household services that Plaintiff endured as a result of Mr.

Malik's and/or HCNNM's negligence is at least $5,000.

### III.     CONCLUSIONS OF LAW

36.     Funding to HCNNM was provided under the Public Health Service Act, 42

U.S.C. §254b.

37.     Under the Public Health Service Act, as amended by the Federally Supported

Health Centers Assistance Act of 1995, 42 U.S.C. §§201 et seq., HCNNM and its employees

may be deemed employees of the United States Public Health Service for purposes of the

Federal Tort Claims Act.

38.     HCNNM has applied for and received from the Secretary of the Department of

Health and Human Services designation of PHS employees status pursuant to 42 U.S.C.

§233.

39.     The claims alleged in Plaintiff's Amended Complaint arise from activity

related to HCNNM's federally funded program.

40.     Jurisdiction is proper in this Court because the causes of action stated in

Plaintiff's Amended Complaint are brought pursuant to 42 U.S.C. §233 and the Federal Tort

Claims Act, 28 U.S.C. §1346(b).

41.     Venue is proper in this district under 28 U.S.C. §1402(b) in that Plaintiff

resides in this district and the acts and omissions giving rise to the causes of action occurred

in this district.

42.     Plaintiff timely filed a claim for damages, injury or death with the United States Department of Health and Human Services.  More than six months elapsed with no action taken on the claim.

43.     Plaintiff has exhausted her administrative remedies set forth under 28 U.S.C. §2675.

44.     In their examination and treatment of Plaintiff, HCNNM and its employees were acting within the scope of their activities deemed to be activities of the United States Public Health Service.

45.     In their examination and treatment of Plaintiff, HCNNM and its employees had a duty to exercise the degree of care, skill and learning expected of a reasonably qualified healthcare provider in the same or similar circumstances, giving due consideration to the locality.

46.     In his examination and treatment of Plaintiff, Mr. Malik breached his duty to exercise the degree of care, skill and learning expected of a reasonably qualified healthcare provider in the same or similar circumstances, giving due consideration to the locality, by among other things:  (1) failing to recognize and/or give proper consideration to Plaintiff's known medical conditions, including her renal insufficiency; (2) administering to Plaintiff a dose of Clonidine; and (3) and failing to comply with protocols for administration of Clonidine for urgent or emergent treatment of hypertension.  In so doing, Mr. Malik was negligent.

9

47.     The negligence of Mr. Malik, described above, was a direct and proximate cause of the injuries to Plaintiff and her resultant damages.

48.     HCNNM's negligent hiring, training and supervision of its employees and medical staff was a direct and proximate cause of the injuries to Plaintiff and her resultant damages.

49.     As a direct and proximate result of the negligence of HCNNM and Mr. Malik, Plaintiff suffered serious bodily injuries, emotional distress, pain and suffering, and loss of enjoyment of life and loss of household services.  Plaintiff has incurred expenses for medical care, commodities and treatment for those injuries.

50.     Plaintiff is entitled to recover general and special compensatory damages as a result of the negligence of HCNNM and/or Mr. Malik.

51.     Defendant is vicariously liable for the negligence of Mr. Malik and the agents and employees of HCNNM, including Mr. Malik.

52.     The total amount of damages to be awarded to Plaintiff, according to the Findings of Fact set forth above, is $386,241.96.

53.     Judgment shall enter in Plaintiff's favor in the amount of $386,241.96, together with costs as allowed by law.  Pursuant to the Local Rules of this Court, Plaintiff is entitled to submit a cost bill within 30 days of the date of entry of judgment.  Plaintiff also is entitled to post-judgment interest.

Respectfully submitted,

ROTHSTEIN, DONATELLI, HUGHES,
DAHLSTROM, SCHOENBURG & BIENVENU, LLP

By      <u>Electronically Signed 10/03/06</u>
        Robert R. Rothstein
        Post Office Box 8180
        1215 Paseo de Peralta
        Santa Fe, NM 87504-8180
        (505) 988-8004

        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of October, 2006, I caused a true and correct copy of the foregoing pleading to be served upon opposing counsel by e-mail and first class U.S. mail, postage prepaid, to:

Elizabeth M. Martinez,
Assistant District of New Mexico U.S. Attorney
P.O. Box 607
Albuquerque, New Mexico 87103-0607

<u>Electronically Signed 10/03/06</u>
ROTHSTEIN, DONATELLI, HUGHES,
DAHLSTROM, SCHOENBURG & BIENVENU, LLP

S:\Bob\6083\Pleadings\Proposed Findings of Fact and Conclusions of Law.wpd

11